**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN BRENT O'DEA,<br><br>*Plaintiff*,<br><br>v.<br><br>AIR CANADA,<br><br>*Defendant*. | **Civil Action No. 1:26-cv-1706**<br><br>The Hon. Trevor N. McFadden, Judge<br><br>*Jury Trial Demanded* |

## FIRST AMENDED COMPLAINT

***Preliminary Procedural Statement***

Plaintiff John Brent O'Dea files this First Amended Complaint as a matter of right within 21 days after Defendant's motion to dismiss. This four-count civil action seeks relief from Defendant Air Canada's serious and documented violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*. Building on the original complaint while streamlining the counts from fourteen (14) to four (4), this First Amended Complaint distills the actionable employment-discrimination violations Defendant committed against Plaintiff: Air Canada subjected a gay, long-serving employee to unequal and hostile treatment; received repeated notice of sexual-orientation bias; then suspended, discharged, and deprived him of pay and benefits, and obstructed ordinary employment-review measures after he opposed the discrimination and filed an EEOC charge. The collective bargaining agreement (CBA) in force between Defendant ant the International Brotherhood of Teamsters appears as

chronology and evidence of differential and/or retaliatory treatment, but this Action does not ask the Court to interpret or enforce the CBA; such is not required to adjudicate the claims now set before the Court.

The First Amended Complaint thus further plausibly alleges a coherent chain from the September 2022 "thrown off a building" statement a supervisor Rehab Saad made as the penalty due Plaintiff for being gay, *see infra*, through Air Canada's: substantiated "gay card" finding; Saad's later "piece of shit" remark and "watch your back" threat deployed against Plaintiff because of his being gay; the rejected complaint/counter-complaint disparity now set out in expansive detail; Plaintiff's demotion and Saad's promotion; Defendant's escalating discipline, incomplete investigation, termination, and interrupted FMLA administration against Plaintiff; and a February 24, 2026, medical warning written by Plaintiff's doctor for, among others, his employer's notice that, rather than effecting accommodation, precipitated still more abuse, hostility, harassment, discrimination, and retaliation that left Plaintiff hospitalized in four distinct admissions since that time.

The Counts are: (I) Title VII disparate treatment because of sex/sexual orientation; (II) Title VII hostile work environment because of sex/sexual orientation; (III) Title VII retaliation; and (IV) FMLA interference/retaliation. This narrowing from the fourteen original counts is to enforce solely statutory rights that exist independently of the CBA. *Hawaiian Airlines v. Norris*, 512 U.S. 246, 256-66 (1994), permits adjudication of independent statutory rights when liability can be resolved without construing the labor agreement.

Air Canada served its Rule 12 motion on August 31, 2026. Under Fed. R. Civ. P. 6(a) and Fed. R. Civ. P. 15(a)(1)(B), the twenty-first day is September 21, 2026, today. Plaintiff timely files this First Amended Complaint as of right and course, superseding the original complaint. Plaintiff

maintains the action pending the Court's disposition of venue and affirmatively requests transfer to E.D. Va. under 28 U.S.C. § 1406(a), rather than dismissal, if the Court finds D.D.C. venue unavailable under 42 U.S.C. § 2000e-5(f)(3); Plaintiff timely and diligently filed at the U.S. EEOC, exhausted that remedy, received a right-to-sue letter issued upon his request earlier this year, timely filed suit within 90 days of that issuance, supplied the right-to-sue letter as the sole exhibit to the Complaint, and would be prejudiced by a Title VII expiration if this case were dismissed rather than transferred due to the expiration of Title VII statutes of limitations since the pendency of this action in May 2026.

Plaintiff attempted to resolve his months-in-progress wrongful termination through counsel from as early as January 2026 through letters and written overtures to schedule his systems hearing under the IBT contract to challenge and reverse the termination process from May through July 2026, and served the May 2026 lawsuit upon Defendant internationally in Montréal as Defendant demanded of him over those months, in August 2026, timely. The 90-day lawsuit-filing deadline under Title VII now has elapsed. In light of the procedural actualities, dismissal rather than transfer of this Title VII lawsuit would work an injustice of the kind disfavored under *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (explaining that § 1406(a) was enacted to prevent plaintiffs from losing claims because of an erroneous venue choice and to remove time-consuming and justice-defeating technicalities), and its D.C. Circuit progeny.

***Preliminary Substantive Statement***

As stated in the opening of the original complaint, Plaintiff articulates Defendant's campaign of retaliation, sexual-orientation discrimination, benefits interference, contractual violations, and post-EEOC termination of Plaintiff after John Brent O'Dea's thirty-six years of service, culminating in the attempted destruction of his retirement security, labor protections, and federally protected civil rights.

To this day, Plaintiff's International Brotherhood of Teamsters "expedited" systems hearing at which he is entitled to respond to stop the termination has never been finally held, and the purported scheduling of said hearing for September 23, 2026, to this day has never been confirmed for Plaintiff, according to IBT attorney Andrew Hoffman and his representative Bob Fisher, as of Monday September 21, 2026 – who were last reached by Plaintiff by email on Friday September 18, 2026, prior to Defendant's filing of its reply brief that, in Footnote 1, feigned a confirmed hearing. Thus, after eight months of notice from Plaintiff requesting the required hearing to which his contract entitles him, Plaintiff's employment expedited hearing remain in limbo, according to the IBT lawyer and representative reached on Friday September 18, 2026.

The Title VII anchor of Plaintiff's case profoundly informs the factual bases of all other counts, and this anchor was made manifestly clear in an express written communication by Defendant. On February 20, 2026, Air Canada's labor counsel Robert S. Blumberg of Littler Mendelson, P.C., wrote: *"Air Canada does not consent to the System Board process while Mr. O'Dea is pursuing overlapping remedies through other processes."* The "overlapping remedy" was an EEOC charge for anti-gay discrimination – filed by Plaintiff John Brent O'Dea, a gay man with thirty-six years of service to Air Canada. Blumberg cited no provision of the collective bargaining agreement to

support that position, because no such provision exists. He cited only the EEOC charge. That sentence is an admission of retaliation in writing, under counsel's signature.

The consequences of the retaliatory acts surrounding that protected activity, which dated to January 2026 and was known expressly by Air Canada, are documented and cascading. Air Canada canceled Plaintiff's ERISA-protected health and dental benefits using a fraudulent backdated termination letter – on the very day Blumberg sent that email – while Plaintiff was recovering from two hospitalizations in the preceding twenty-one days. Air Canada's union counterpart, International Brotherhood of Teamsters (hereafter "IBT") counsel Andrew Hoffmann, confirmed in writing on February 24, 2026, that "Air Canada seems to be reticent to schedule a System Board on Mr. O'Dea's grievance based on the EEOC charge you have file[d]" – and then offered to make the problem go away if only Plaintiff would drop his federal civil rights claims as a condition of receiving the mandatory contractual hearing to which he is unconditionally entitled. Plaintiff did not agree.

The contractual hearing Air Canada still refuses to confirm/hold was specifically designated "expedited" by the parties to the collective bargaining agreement. Although Plaintiff assented to a September 23, 2026, date weeks ago, the IBT attorney (Andrew Hoffman) and union representative (Bob Fisher) of Mr. O'Dea for the hearing have conveyed no confirmation to Mr. O'Dea or his counsel, as of September 21, 2026, of an IBT hearing to be held. And Hoffman was expressly asked for confirmation on Friday September 18, 2026, by email *before* Defendant's reply brief was filed, alleging, in Footnote 1, that it was mystified by Plaintiff's systems-hearing scheduling concern (which it has effected all year long and counting). The delays are not neutral administration. They are the direct, documented, and ongoing injury caused by Air Canada's

written decision to use the EEOC charge as a weapon to block a mandatory contractual right – while a sick, hospitalized, unlawfully uninsured, unrepresented employee waited.

Air Canada did all of this with full and contemporaneous knowledge. The three email chains set forth below – Blumberg to Jones on February 20, Jones to Blumberg on February 21, and Hoffmann to Jones on February 24 – place Air Canada on notice of every material fact: the EEOC filing, the timely contractual appeal, the contractual mandate for benefits continuation, the fraudulent backdated letter, the hospitalizations, and the Title VII exposure. Air Canada proceeded anyway. This Court is asked to remedy what Air Canada's own lawyers documented and Air Canada intentionally carried out.

The EEOC's Notice of Right to Sue, Charge No. 570-2026-01494, was issued February 21, 2026, executed by Director Mindy E. Weinstein, EEOC Washington Field Office, and attached as the sole Exhibit to Plaintiff's original Complaint, following ordinary procedure in filing Title VII lawsuits.

**PARTIES**

**1.** Plaintiff John Brent O'Dea is a fifty-eight-year-old gay man residing at 1515 Sixteenth Street NW, Unit 1A, Washington, D.C. 20036. He has been continuously employed by Air Canada since November 5, 1990 – approximately thirty-six years – and is a member in good standing of IBT Local 210. His Employee ID is AC069606. He will become eligible for full early unreduced retirement with lifetime pension and health benefits under the Air Canada U.S. Pension Plan effective November 1, 2026. His retirement application was already on file with Air Canada at the time of the acts alleged herein.

**2.** Defendant Air Canada is a Canadian corporation and international air carrier, with principal headquarters at 7373 Côte-Vertu Boulevard West, Saint-Laurent, Quebec H4S 1Z3, Canada, and its Labour Relations division at P.O. Box 14000, ZIP 263, Saint-Laurent, Quebec H4Y 1H4, Canada. Air Canada employs Plaintiff and other bargaining unit employees in the Washington, D.C. seniority district and is party to the 2019–2029 Collective Bargaining Agreement with the International Brotherhood of Teamsters ("IBT Agreement" or "Agreement"). Air Canada is the plan sponsor and administrator of the ERISA-covered health, dental, pension, and 401(k) plans applicable to Plaintiff.

## JURISDICTION AND VENUE

**3.** This Court has subject matter jurisdiction under 28 U.S.C. § 1331; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and § 2000e-3(a); ERISA §§ 502 and 510, 29 U.S.C. §§ 1132, 1140; the FMLA, 29 U.S.C. § 2601 *et seq.*; and 28 U.S.C. §§ 1343 and 2201–2202. The Court has supplemental jurisdiction under 28 U.S.C. § 1367.

**4.** Venue in this District arose in the original 14-count complaint as per 28 U.S.C. § 1391(b). Plaintiff resides in Washington, D.C.; the parties designated D.C. as the System Board hearing location; and the events and medical harm giving rise to these claims occurred substantially in this District.

**5.** Plaintiff timely exhausted his administrative remedies. The EEOC issued its Notice of Right to Sue in Charge No. 570-2026-01494 on February 21, 2026, signed by EEOC Washington Field Office Director Mindy E. Weinstein. *See* Exhibit A. Attorney Jones transmitted the Notice to Air Canada's counsel, Robert S. Blumberg, that same day.

# I. FUNDAMENTAL FACTUAL ALLEGATIONS

## A. Plaintiff and Air Canada's Longstanding Knowledge

1. Plaintiff John Brent O'Dea is a gay man who began working for Defendant Air Canada in or about November 1990. By the events culminating in his discharge, he had devoted approximately thirty-six years to Air Canada, including approximately twenty-nine years in a Lead Customer Experience Specialist position at Ronald Reagan Washington National Airport (DCA).

2. Plaintiff performed passenger-service, operational, training, and leadership duties. Air Canada repeatedly relied upon his experience, including selecting him to manage the DCA station for three days from November 19 through November 21, 2024, while the station manager and assistant manager attended company meetings.

3. For years before the adverse actions at issue, Air Canada knew that Plaintiff suffered from chronic obstructive pulmonary disease (COPD), severe allergic asthma, interstitial lung disease, and serious sensitivity to fragrance, smoke, dust, fumes, and other airborne irritants. Air Canada also knew that Plaintiff had a permanent, massive right-shoulder rotator-cuff tear arising from a January 19, 2022 workplace injury.

4. Plaintiff repeatedly supplied medical documentation, requested intermittent FMLA leave, and requested workplace measures that would reduce pulmonary triggers and allow him to work within his shoulder restrictions. His requests included assignment to the Operations office, close covered parking, desk duties, an ergonomic chair, and limits on repetitive pushing, pulling, overhead work, and lifting.

5. Air Canada also had longstanding actual notice that Plaintiff believed he was being subjected to anti-gay hostility and unequal scrutiny. Plaintiff reported those concerns through

managers, Human Resources, Air Canada's Harassment Office, investigators, Employee Assistance, and an Air Canada LGBTQ+ employee group.

**B. Rehab Saad's Anti Gay Hostility and Air Canada's Failure to Protect Plaintiff**

6. Rehab Saad joined the DCA workplace in or about August 2022. Her conduct toward Plaintiff became a central part of the hostile environment that Plaintiff repeatedly reported to Air Canada.

7. In or about September 2022, Rehab Saad told Plaintiff that he should consider himself fortunate that he had not grown up in the Middle East because, there, people would have thrown him off a building. The statement expressly invoked lethal violence against gay people and was directed to Plaintiff as a gay man.

8. Rehab also called Plaintiff a 'piece of shit.' Plaintiff reported Rehab's anti-gay and hostile conduct to Air Canada managers, investigators, the Employee Assistance Program, and LGBTQ+ resources, but Air Canada did not take effective corrective action sufficient to stop her conduct.

9. The hostility continued. In a near-contemporaneous July 11, 2024 written record, Plaintiff documented that, during June 2024, Rehab entered Air Canada's Operations office while Plaintiff was seated and said to other persons present: 'Look at that piece of shit sitting there.'

10. By July 2024, Plaintiff had experienced Rehab's conduct as a repeated course of antagonism rather than an isolated personality dispute. He had also reported that strong fragrances used in the workplace aggravated his COPD and asthma and that Rehab continued conduct he understood to exploit or disregard those known pulmonary vulnerabilities.

11. On July 1, 2024, Plaintiff filed a formal internal harassment complaint against Rehab. On July 2, 2024, the next day, Air Canada issued Plaintiff a reprimand arising from his request that coworkers attending an employee luncheon bring him a plate of food while he remained at the counter to maintain coverage.

12. Rehab filed a counter-complaint accusing Plaintiff of discrimination based on religion and national origin. Air Canada placed Plaintiff's complaint and Rehab's counter-complaint into the same investigative structure, but treated their outcomes materially differently: Plaintiff's complaint was rejected or deemed insufficiently supported, while Rehab's counter-complaint was used to impose major discipline against Plaintiff.

13. Plaintiff repeatedly requested the concrete incidents, dates, statements, witnesses, interview materials, and evidence supporting Rehab's counter-complaint. Air Canada supplied broad conclusions but did not provide Plaintiff the underlying information necessary to answer the allegations meaningfully.

14. On August 6, 2024, before his interview with outside investigator Beth Gramigna, Plaintiff reported in writing that returning to work caused anxiety, nausea, sleeplessness, dread, and aggravation of his disability. He specifically identified Cheryll Thwaites and Rehab as continuously causing that distress.

15. On August 13, 2024, Plaintiff gave Gramigna the name of Teresa Vanta as a firsthand witness to an incident in which Plaintiff had asked Rehab to stop creating a hostile work environment. Plaintiff reported that Rehab's aggressive behavior and daily attempts to antagonize him were continuing and that Thwaites did not correct or discipline the behavior.

16. On August 20 and 21, 2024, Plaintiff reported to Gramigna that coworker Jean Armoo-Daniels had told him Thwaites was attempting to induce Ahmed Abdalla to file a harassment complaint against Plaintiff to assist Rehab's case. Gramigna acknowledged receipt. Plaintiff further reported that he had unsuccessfully sought help from Air Canada's LGBTQ+ group, Employee Assistance, the harassment team, and management.

17. On September 3, 2024, Gramigna wrote that she was concerned employees might be discussing the supposedly confidential investigation. Plaintiff had repeatedly told her that he believed the investigation was not confidential and that workplace discussion of it was increasing the pressure and hostility directed toward him.

18. Also on September 3, 2024, Plaintiff warned Gramigna in writing that Rehab's behavior made him fear escalation to physical violence. He described expressions of disdain, anger, door slamming, and conduct that caused him to fear she might throw an object or otherwise become physically violent. Gramigna acknowledged the warning that same day.

19. Plaintiff identified a safety comparator: after Rehab and another employee reported that they did not feel safe working with Stephen Kim, Air Canada promptly removed Kim pending investigation. By contrast, after Plaintiff repeatedly reported that he did not feel safe working with Rehab, Air Canada left Rehab in place and did not afford Plaintiff comparable protection.

20. On December 19, 2024, Air Canada imposed a ten-day unpaid suspension and removed Plaintiff from the Lead position he had held for approximately twenty-nine years. Regional Manager Peter O'Kane imposed the discipline following the investigation of Rehab's counter-complaint, although Plaintiff was not provided the specific incidents, dates, words, or witness statements on which the decision rested.

21. On January 15, 2025, only twenty-seven days after Plaintiff's demotion, Thwaites announced that Rehab had accepted a temporary assignment as a Lead Customer Experience Specialist. Air Canada praised Rehab's dedication and value as a team player while placing her into the same Lead classification from which Plaintiff had just been removed after complaining about her.

22. On January 25, 2025, while Plaintiff was on light duty with his arm in a sling, Rehab was Lead on the shift and left Plaintiff alone at the busy check-in counter for more than an hour while other employees were positioned at the gate. Plaintiff alleges that the assignment disregarded his known restrictions and set him up to absorb the consequences of predictable service failures.

23. On August 12, 2025, during an open staff briefing, Rehab publicly disclosed Plaintiff's medical limitations and light-duty restrictions before coworkers including Ahmed, Jorge, Jean, and Habib. She directed him to assist at the check-in counter despite the permanent rotator-cuff injury and denied him an overtime opportunity by invoking those limitations.

24. At approximately 8:10 p.m. on August 12, 2025, Rehab cornered Plaintiff near the DCA ticket counter and threatened him by stating, 'You better watch your back.' Plaintiff reported that the encounter occurred within view of the first computer check-in counter's security camera and asked Air Canada to preserve or review the footage. Air Canada did not advise Plaintiff that the footage had been preserved or reviewed.

25. On August 27, 2025, at approximately 2:30 p.m., Plaintiff called Rehab to report that he needed to use the restroom, as employees had been instructed to do. Rehab slammed down or hung up the telephone. Coworker Bruck Zewdie was present and could corroborate the call.

26. Plaintiff immediately reported the August 27 telephone incident to Thwaites. Thwaites acknowledged that Rehab should not hang up on Plaintiff, but excused the conduct by saying Rehab was 'extremely tired.' On other occasions, Thwaites similarly responded to Plaintiff's reports by saying, 'Rehab is tired.'

27. Plaintiff alleges that Air Canada's repeated refusal to discipline or restrain Rehab communicated that her hostility toward him was institutionally tolerated. Air Canada instead elevated Rehab, disciplined and demoted Plaintiff, and ultimately removed Plaintiff from the workplace.

**C. Corroborated Anti Gay Culture and Corporate Notice**

28. The hostility toward Plaintiff was corroborated by persons other than Plaintiff. On December 14, 2022, coworker and trainee Glenn Aragon reported to Thwaites and Human Resources that he perceived a hostile work environment and unequal treatment of Plaintiff based on sexual orientation.

29. Aragon wrote: 'I felt co-worker Brent O'Dea has been treated very differently due to his sexual preferences. At some point during training co workers came to lead Ibrahim to discuss my new role and co workers reassured him I was not gay "like the other guy"' - a reference to Plaintiff.

30. Aragon further wrote: 'Management always tried to incriminate Brent into situations he was not a part of' and 'I strongly believe Brent is a targeted minority in the company who was held at a different standard than everyone else.'

31. On December 15, 2022, Plaintiff forwarded Aragon's report directly to Emily Kaufer, Air Canada's Senior Director for Human Rights and Harassment, and to the corporate Harassment

Office. Air Canada's systems generated ServiceNow tracking numbers HR1298799 and HR1299719.

32. In his own December 15 complaint, Plaintiff told Air Canada: 'I am so upset my blood pressure is high, my hands are shaking. Cheryll Twaites has treated me horribly. . . . As a gay man I have been demoralized by her. I have been a loyal Air Canada employee for 32 years.'

33. Air Canada investigated aspects of Plaintiff's complaint. On April 6, 2023, its investigator informed Plaintiff that the evidence showed it was more likely than not that Thwaites had used the phrase 'gay card' when Plaintiff complained about his treatment.

34. Although Air Canada substantiated that Thwaites invoked the 'gay card,' it concluded that the remark did not demonstrate sexual-orientation animus. Air Canada declined to explain the evidentiary basis for distinguishing the substantiated anti-gay phrase from discriminatory animus, invoking confidentiality even though Plaintiff had supplied approximately forty-four emails.

35. Plaintiff alleges that a manager's use of the phrase 'gay card' minimized his protected complaint and conveyed that raising anti-gay unequal treatment would itself be treated as manipulation. Air Canada's failure to impose effective correction emboldened later hostility.

36. Plaintiff also reported that coworkers used anti-gay language about other employees. Orlando Ortiz can corroborate that Lead Ibrahim Elbayyar directed the vulgar homophobic expression "culo rojo" toward him without meaningful corrective action by Air Canada.

37. In early 2024, Kenneth Brown, a manager with Allied Fuelers, a ground-handling operation for Defendant, reported that Rehab had telephoned him and described one of his employees as a "lazy gay" fueler. Plaintiff did not personally hear the call, but reported the account to Air Canada as further evidence that Rehab used sexual orientation as a term of disparagement.

38. On October 4, 2024, Plaintiff reported to Gramigna that coworker Kaotar or Katar criticized him as speaking 'only to men' and then spoke loudly with another coworker in a manner Plaintiff experienced as gendered hostility. Plaintiff explained that he had lost confidence in reporting locally because he expected Thwaites to demoralize him further.

39. Plaintiff alleges that these events, considered together with Rehab's thrown-off-a-building statement, the 'gay card' finding, Rehab's repeated personal attacks, and Air Canada's promotion of Rehab following Plaintiff's complaint, demonstrate a workplace in which anti-gay commentary and gendered hostility were tolerated while Plaintiff's reports were discredited and used against him.

**D. Selective Scrutiny and Disparate Treatment**

40. Air Canada subjected Plaintiff to exceptional scrutiny by both local management and Peter O'Kane, a regional manager who worked from Newark Airport or Pennsylvania and did not supervise Plaintiff onsite each day. From 2022 through 2025, O'Kane repeatedly participated in expectations, warnings, reprimands, investigations, suspension, demotion, and discharge-related decisions concerning Plaintiff.

41. Plaintiff was repeatedly required to explain operational delays, missed meal periods, overtime, and coworker conduct that he did not witness and could not control. Plaintiff alleges that Air Canada did not subject similarly situated leads to the same persistent multi-level scrutiny.

42. For example, in February 2024, management demanded three times that Plaintiff explain a gate delay even though he repeatedly stated that he had been working in Operations and had not witnessed the gate activity. Plaintiff identified the employees who were at the gate, yet Thwaites and O'Kane continued to direct the inquiry toward Plaintiff.

43. Plaintiff repeatedly reported inadequate Lead staffing on the afternoon shift, forced overtime, missed breaks, and the impossibility of managing Operations while simultaneously supervising distant gate activity. Air Canada often reframed those structural concerns as deficiencies in Plaintiff's attitude, time management, or leadership.

44. Plaintiff further alleges that his overtime, timecard, leave, and schedule requests received more scrutiny than comparable requests by Ileene Sanchez, Valentina Thapanawat, Teresa Vanta, Rehab, Ibrahim Elbayyar, and other employees. He repeatedly identified comparator transactions and asked Air Canada to apply one consistent standard.

45. Plaintiff's first forgotten airport badge in March 2022 resulted in lost pay, attendance consequences, a Letter of Expectation placed in his personnel file, and a written progression warning. Plaintiff later observed Ahmed Abdalla working with an expired badge and alleges Rehab worked for more than one week after losing her badge, without discipline comparable to Plaintiff's.

46. Plaintiff repeatedly requested a Saturday off during Gay Pride and alleges the request was immediately denied in three successive years, while favored employees received repeated release-from-operations days, vacation extensions, scheduling exceptions, and other leave accommodations.

47. In September 2024, Plaintiff objected that Rehab received repeated Operations assignments while he was forced into less desirable closing assignments. Operations work would have reduced Plaintiff's fragrance exposure and was work he could perform within his documented restrictions, yet Air Canada rejected regular Operations placement for Plaintiff while assigning it repeatedly to Rehab and others.

48. On August 22, 2025, O'Kane acknowledged Plaintiff's complaint alleging sexual-orientation and disability discrimination by Rehab but threatened to deem the complaint withdrawn unless Plaintiff supplied additional information within seven days.

49. On August 29, 2025, O'Kane issued a formal Letter of Warning accusing Plaintiff of 'malicious compliance' because Plaintiff called several times on August 27 to report restroom departures. Plaintiff alleges that he was following the August 5 instruction by Thwaites and Rehab requiring employees to notify a Lead before leaving their positions, including to use the restroom, during a medical symptom flare.

50. The August 29 warning threatened progression to suspension pending discharge and was copied to USA Airport Operations Director Elia Akkouche and Labour Relations Senior Manager Andrea Zaffaroni. Plaintiff alleges that Air Canada punished him for complying with an instruction while excusing Rehab's hostile conduct during the same incident.

**E. Repeated Protected Complaints and Retaliatory Escalation**

51. Plaintiff engaged in protected opposition repeatedly, including the December 2022 complaints, his July 1, 2024 complaint against Rehab, his reports to Air Canada's LGBTQ+ group and Harassment Office, his September 2024 safety and retaliation reports, his August and September 2025 complaints, his January 29, 2026 assertion of anti-gay discrimination through counsel, and EEOC Charge No. 570-2026-01494.

52. After Plaintiff's July 1, 2024 complaint against Rehab, Air Canada reprimanded him the next day, credited Rehab's counter-complaint over his complaint, imposed a ten-day unpaid suspension, removed his twenty-nine-year Lead status, and then elevated Rehab into the Lead classification within twenty-seven days.

53. In September 2025, Plaintiff filed another complaint alleging hostile work environment, retaliation, disability discrimination, and continuing conduct involving Rehab. Air Canada initially proposed an investigator associated with the same investigative structure used previously. After Plaintiff objected, Air Canada retained Nancy Burnett of The SB Group.

54. Plaintiff met with Burnett on December 18, 2025. Burnett told Plaintiff there would be a final interview of approximately one hour. Air Canada never provided that promised final interview, yet later treated the investigation as complete and relied upon it to end Plaintiff's employment.

55. During the investigation, Plaintiff reported that confidential information had leaked into the workplace and that hostile commentary about him and the investigation had been broadcast over Air Canada's radio system. A coworker sent Plaintiff contemporaneous messages confirming the broadcast.

56. When Plaintiff reported the confidentiality breach, Kaufer circulated a 'Confidentiality Reminder' on December 8, 2025, copying Burnett and O'Kane, stating: 'If anyone needs clarification about the consequences of not following this confidentiality standard, you are encouraged to contact Peter O'Kane directly.'

57. Because O'Kane had personally participated in years of discipline against Plaintiff, Plaintiff understood Kaufer's invocation of 'consequences' and direction to O'Kane as a threat following his protected report, rather than protection from the breach he had reported.

58. On October 16, 2025, Air Canada Vice President Gilda Romanelli, O'Kane, and a corporate Human Resources representative met behind closed doors with Thwaites at DCA.

Following the meeting, Thwaites was removed from the workplace and did not return. O'Kane told Plaintiff that Thwaites was no longer with Air Canada.

59. Exactly four days later, on October 20, 2025, at approximately 9:13 a.m., Kaufer suspended Plaintiff remotely while he was away from DCA on a scheduled day off. Kaufer stated that Air Canada had received complaints alleging Plaintiff contributed to a hostile work environment, but did not provide him specific incidents, dates, or evidence.

60. Air Canada removed Plaintiff alone even though he was the employee who had repeatedly reported feeling unsafe because of Rehab's conduct. It thus applied to Plaintiff the immediate-removal protection it had declined to afford him when he complained about Rehab.

61. Because Air Canada suspended Plaintiff on a day off and barred him from airport property, he could not secure his locker. Plaintiff immediately told Kaufer that the locker contained unredacted Social Security, passport, address, and other identity information and requested escorted access.

62. Kaufer declined the request, stating: 'Please note that I am not aware of any fraud at DCA, as you suggest.' Plaintiff had reported the risk of exposure, not that completed identity theft had already occurred.

63. O'Kane later arranged for coworker Jean Armoo-Daniels to handle and pack Plaintiff's private locker contents without allowing Plaintiff to select a trusted representative. Plaintiff's belongings were packed and sent to him while his suspension and internal challenge remained unresolved.

64. Plaintiff alleges that cutting open or clearing his locker, exposing private papers, and visibly removing his belongings before any completed hearing humiliated him before coworkers and demonstrated that Air Canada had predetermined that he would not return.

65. Plaintiff remained on paid suspension until late January or early February 2026, when Air Canada changed his status to unpaid suspension pending discharge or termination, ended his pay and travel privileges, and disrupted his medical benefits.

66. On January 29, 2026, Plaintiff, through counsel, asserted EEO violations including anti-gay discrimination. Air Canada immediately withdrew a pending separation proposal. Thirteen days later, on February 11, 2026, Air Canada issued a Suspension Pending Discharge notice.

67. Plaintiff timely appealed and sought an expedited System Board process. On February 20, 2026, Air Canada's counsel wrote: 'Air Canada does not consent to the System Board process while Mr. O'Dea is pursuing overlapping remedies through other processes.' Counsel expressly identified the EEOC complaint as the external process.

68. Air Canada's counsel also stated: 'Air Canada does not consent to Mr. O'Dea's purported request for outside representation at any such hearing.' Plaintiff's outside counsel was the lawyer who had asserted the EEO violations and pursued the EEOC charge.

69. On February 24, 2026, union counsel Andrew Hoffmann confirmed in writing that 'Air Canada seems to be reticent to schedule a System Board on Mr. O'Dea's grievance based on the EEOC charge' and Plaintiff's announced federal litigation. Hoffmann proposed advising Air Canada that Plaintiff did not intend to pursue further statutory claims so that the grievance could proceed. Plaintiff refused to surrender his civil-rights claims.

70. The System Board process was repeatedly delayed while Plaintiff remained unpaid. The June 19, 2026 setting was cancelled; a July 2 setting did not proceed while Plaintiff was hospitalized; and a September 23 setting remained subject to delayed confirmation and limited preparation. Plaintiff alleges that Air Canada used delay, pay deprivation, and benefit uncertainty to increase pressure on him after protected activity.

**F. FMLA Interference Retaliation and the Medical Cascade**

71. Air Canada knew for years that Plaintiff used intermittent FMLA leave for permanent asthma, COPD, interstitial lung disease, and related exacerbations. Plaintiff submitted and resubmitted certifications, but Air Canada repeatedly questioned, delayed, recoded, or demanded additional proof for absences associated with those conditions.

72. On December 18, 2023, Plaintiff reported a positive COVID test, requested that approved FMLA cover the absence, and warned that his pulmonary history placed him at risk of hospitalization. Air Canada required or requested a photograph of his at-home COVID test, which Plaintiff experienced as intrusive and inconsistent with the treatment of other employees.

73. On March 4, 2024, Plaintiff documented that Air Canada challenged FMLA leave associated with COPD, asthma, interstitial lung disease, and COVID; counted disputed illness absences toward attendance discipline; and required repeated medical substantiation. Plaintiff reported that O'Kane had told him he could not 'pick and choose' when to use FMLA.

74. Plaintiff was hospitalized for a prolonged COPD exacerbation in April 2024 after multiple admissions and urgent visits during the preceding months. His pulmonologist recommended an Operations-office assignment away from visibly ill employees and excessive

fragrance. Air Canada denied or failed to implement that requested placement while assigning Operations shifts repeatedly to Rehab and other employees.

75. On December 13, 2024, Plaintiff again submitted FMLA paperwork for asthma and COPD. On February 11, 2025, Air Canada required him to resubmit paperwork that had been pending for approximately two months.

76. In January 2025, Air Canada assessed or disputed attendance points for absences on January 18, 21, and 22 that Plaintiff believed qualified under his approved intermittent FMLA. Plaintiff alleges that Air Canada used leave administration and attendance discipline as part of the escalating scrutiny following his protected complaints.

77. Plaintiff was admitted to Inova Hospital Heart and Vascular Institute from January 26 through February 1, 2026, for severe respiratory distress and acute exacerbation of COPD and asthma. He was readmitted from February 7 through February 11, 2026.

78. Air Canada issued the Suspension Pending Discharge notice on February 11, 2026, the date of Plaintiff's second discharge from the hospital. Plaintiff had initiated additional FMLA paperwork, but Air Canada's Benefits Advisor reported it was 'on hold' while the company processed his separation and benefits status.

79. Air Canada ended or interrupted Plaintiff's health and dental coverage while it knew he was undergoing active medical treatment and had just completed back-to-back hospital admissions. Plaintiff and his counsel repeatedly notified Air Canada of the immediate danger presented by a lapse in coverage.

80. On February 24, 2026, Timothy Price, M.D., Plaintiff's treating internist at Price Medical, issued a written medical warning. The notice stated verbatim:

81. To Whom It May Concern,

Mr. John B. (Brent) O'Dea is currently under my medical care and has ongoing medical conditions that require continuous management, treatment, and follow-up.

Due to the nature of his conditions, uninterrupted access to medical care and health insurance coverage is medically necessary. A disruption or termination of his medical insurance benefits would be harmful to his health and could negatively impact the continuity and effectiveness of his treatment.

It is my professional medical opinion that Mr. O'Dea should maintain active health insurance coverage to ensure appropriate ongoing care.

Please feel free to contact our office if additional information is required.

Sincerely,

Timothy Price, MD
Internal Medicine, Price Medical

82. Plaintiff's counsel transmitted the February 24 medical warning while expressly advising that Air Canada had acted amid Plaintiff's back-to-back hospitalizations. Air Canada therefore had written physician confirmation that uninterrupted coverage was medically necessary and that termination or disruption would be harmful.

83. Notwithstanding that notice, Plaintiff remained without stable income and experienced interruption and uncertainty regarding medical benefits while his employment and hearing status remained unresolved.

84. Since late January 2026, Plaintiff has required at least six hospital visits, including four admissions. His reported conditions and symptoms included COPD and asthma exacerbations,

anxiety, and serious gastrointestinal problems. A scheduled July 2, 2026 hearing coincided with a four-day hospitalization.

85. Plaintiff alleges that Air Canada's interruption of pay and benefits, prolonged uncertainty, repeated hearing delays, and continued resistance to his statutory claims imposed extraordinary stress upon a person whom Air Canada knew was managing serious pulmonary disease and had just sustained repeated hospital admissions.

86. Plaintiff further alleges that Air Canada's failure to process and protect his FMLA-supported absences, the placement of renewed paperwork 'on hold,' the use of attendance and leave disputes in discipline, and the adverse actions closely following medical leave interfered with his FMLA rights and retaliated against him for exercising them.

**G. Factual Nexus to the Four Counts**

87. The foregoing facts support Count I because Air Canada allegedly imposed disparate scrutiny, discipline, demotion, suspension, discharge, loss of pay, and benefit disruption upon Plaintiff because of sex, including sexual orientation, while tolerating and rewarding employees who directed anti-gay and hostile conduct toward him.

88. The foregoing facts support Count II because Plaintiff alleges a years-long course of anti-gay commentary, gendered ridicule, public humiliation, threats, unsafe conditions, leaked complaints, unequal protection, and management ratification that was severe or pervasive enough to alter the conditions of his employment.

89. The foregoing facts support Count III because Air Canada's adverse actions escalated after Plaintiff's repeated internal complaints, his complaint against Rehab, his reports to LGBTQ+ and harassment channels, his January 29, 2026 EEO assertion, and his EEOC charge; and because

Air Canada expressly linked ordinary employment-review processing to his pursuit of EEOC and federal remedies.

90. The foregoing facts support Count IV because Air Canada had longstanding notice of Plaintiff's serious pulmonary conditions and intermittent FMLA use, repeatedly challenged or delayed FMLA administration, placed renewed paperwork on hold during his separation, acted immediately after qualifying hospitalizations, interrupted the insurance necessary for continuing care, and persisted after receiving Dr. Price's written warning of medical harm.

91. As a direct and proximate result of the alleged discrimination, hostile work environment, retaliation, and FMLA interference and retaliation, Plaintiff lost wages, benefits, retirement security, employment status, and professional standing and suffered physical injury, medical disruption, emotional distress, humiliation, anxiety, and other compensable harm.

## II. ADDITIONAL FACTUAL ALLEGATIONS

### H. The IBT Agreement's Mandatory Protections

92. The following IBT Agreement provisions are relevant in this action:

- **Article 22.09**: Upon written request by a suspended employee within seven (7) calendar days of receiving a Suspension Pending Discharge notice, Air Canada *shall* provide an Expedited System Board hearing. **Mandatory Note**: "It is agreed that when an employee is 'Suspended Pending Discharge' the Company will maintain the employees' coverage under the Company provided Health and Dental Plans until the Expedited System Board has rendered a decision."
- **Article 22.10**: "If a hearing is requested, and if the decision of the Expedited System Board is to discharge or Deadlock, the discharge will be effective the day following the date of the Expedited System Board decision."
- **Article 22.05**: "For the conduct of such hearing, the employee shall have reasonable opportunity to secure the assistance of his Local Union Business Agent or **designee**." (Emphasis added.)

- **Article 22.13**: All disciplinary letters "will be removed from the employee's service record after a period of two (2) years from the date of issuance."
- **Article 37.01**: Any change or modification to the Agreement "shall not be binding unless made by mutual agreement in writing."
- **Article 21.04**: Air Canada's failure to respond within time limits "shall result in the grievance being upheld."
- **Article 23.05**: "In the case of a discharge of an employee, the Board shall meet at a mutually agreeable time in the city of the discharged employee."

93. The hearing mandated by these provisions is expressly designated "expedited." The hearing was supposed to have been scheduled for September 23, 2026 – two hundred and twenty-four (224) days after the Suspension Pending Discharge notice and four months after Air Canada was sued over the denial of the hearing – is not expedited by any reasonable meaning of that word. The delay is part and parcel of the violation, the injury, and the cause of continuing injury.

**I. Protected Activity: EEOC Charge and EEO Assertion**

94. On January 29, 2026, Plaintiff, through counsel Amos N. Jones, asserted EEO violations against Air Canada in writing, including anti-gay bias. Air Canada had a settlement offer on the table. It immediately withdrew that offer upon receiving the January 29 EEO assertion.

95. The EEOC commenced expedited handling of Plaintiff's Charge of Discrimination, No. 570-2026-01494. The EEOC telephoned Attorney Jones personally on February 4, 2026, to confirm intake and processed the Charge on an executed EEOC Form 5.

96. Attorney Jones is Plaintiff's EEOC counsel. He filed the EEOC Charge, authored the January 29, 2026, EEO assertion letter, and transmitted an FRE 408 settlement proposal[1] to Air Canada's

[1] Federal Rule of Evidence 408, an exclusionary rule, expressly provides exceptions to the exclusion, allowing that a court may admit evidence of compromise offers and negotiations not to evidence value of a case and/or any alleged admission of culpability by a party, but rather, "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid.

labor counsel Blumberg on February 10, 2026 – proposing the existing Separation Agreement entirely unchanged, with compensation adjusted to $935,000 reflecting eleven years of front pay through Plaintiff's November 1, 2026, retirement eligibility date. Air Canada did not respond.

97. Plaintiff also filed multiple internal discrimination and hostile work environment complaints with Air Canada prior to and independent of the EEOC charge. Those internal complaints constitute protected opposition activity under Title VII and were known to Air Canada at all relevant times. Since filing those complaints, Plaintiff has been isolated from the disciplinary process and denied basic procedural fairness.

**J. Suspension Pending Discharge and Timely Appeal**

98. On February 11, 2026 – thirteen (13) days after the January 29, 2026, EEO assertion – Air Canada issued a Suspension Pending Discharge ("SPD") notice to Plaintiff. Plaintiff received it via FedEx on February 13, 2026, and was not formally advised of the status change until February 24, 2026 – eleven days after delivery.

99. Plaintiff's employment status shifted repeatedly and without adequate explanation during this period: from suspension with pay, to purported termination, to reinstatement to SPD, to suspension without pay – each shift carrying material consequences for income and benefits, and each communicated, if at all, with delay and without documentation.

---

408(b). Following Rule 408 with this plain exception, D.C.'s federal trial courts are to admit evidence of compromise offers and negotiations for the purpose of showing that the parties engaged in interactive processes and/or for evidencing the commission of Title VII retaliation during settlement negotiations. *Carney v. American University*, 151 F.3d 1090, 1095-96 (D.C. Cir. 1998) (plainly establishing that settlement letters "can be used to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence (discrimination)").

100. On February 17, 2026 – within four (4) calendar days of receipt, and well within Article 22.09's seven-day deadline – Plaintiff, through Attorney Jones, filed a formal Appeal Request for Expedited System Board Hearing via FedEx International Priority to Senior Director Giuseppe Morello and Vice-President Michael Abbott at Air Canada's Saint-Laurent, Quebec headquarters. A copy went to IBT Business Agent Bob Fisher. The appeal expressly designated Attorney Jones as Plaintiff's representative pursuant to Article 22.05: "Mr. O'Dea will be represented at the expedited System Board hearing, not by the Union Business Agent of the International Brotherhood of Teamsters, but by Mr. O'Dea's designee ... undersigned Washington, D.C. Labor & Employment counsel, Amos N. Jones." FedEx confirmed delivery to Air Canada headquarters on February 19, 2026, at 11:34 a.m. Eastern Time. Air Canada did not acknowledge the appeal.

**K. The Backdated Termination Letter and Void Discharge**

101. On February 19, 2026 – the same day delivery of Plaintiff's appeal was confirmed – Plaintiff received via FedEx and U.S. Mail two identical copies of a purported termination letter bearing the signature of Peter A. O'Kane and the date "February 10, 2025" – more than one year before physical delivery. The letter was shipped February 18, 2026. The false date was fabricated to create a chronology suggesting termination predated the appeal.

102. The termination letter relied on a Letter of Expectation dated February 7, 2024. By operation of Article 22.13, that document was required to be removed from Plaintiff's service record by February 7, 2026 – before the SPD notice – rendering it a contractually stale and impermissible predicate for discharge.

103. On February 17, 2026, Air Canada's Benefits Advisor Katie Hill confirmed via HR Ticket No. HR2253013 that Plaintiff's status had been "updated to terminated, effective February 10, 2026" – adopting the fraudulent backdated date as the administrative benefits termination date. On

February 20, 2026, at 2:55 p.m., Ms. Hill confirmed in writing: "The termination letter we received it dated for February 10, 2026. Your benefits terminate the same day." Air Canada's HR was thus administering the cancellation of ERISA-protected health and dental benefits on a fabricated date, while the SPD remained unresolved, the System Board had rendered no decision, and Article 22.09's mandatory Note required continued coverage.

**L. The Written Admissions of Retaliation: February 20, 21, and 24**

104. On February 20, 2026, Attorney Jones transmitted a formal demand to Blumberg, requiring confirmation by 8:00 p.m. Eastern Time that Air Canada had received the timely-filed appeal, that the purported termination was contractually void, that Plaintiff's medical coverage remained in force, and that the Expedited System Board would be scheduled within five business days.

105. At 7:21 p.m. on February 20, 2026, Blumberg responded on behalf of Air Canada with the following, quoted verbatim:

*"pursuant to past practice between Air Canada and the IBT, System Board Hearings do not proceed while external administrative proceedings or civil litigation is ongoing. Air Canada has received the EEOC Complaint that you filed on behalf of Mr. O'Dea, and will respond to that matter as appropriate. Air Canada does not consent to the System Board process while Mr. O'Dea is pursuing overlapping remedies through other processes."*

In the same email, Blumberg stated separately:

*"Air Canada does not consent to Mr. O'Dea's purported request for outside representation at any such hearing."*

Air Canada cited no provision of the IBT Agreement to support the claimed "past practice" – because no such provision exists. It cited no Letter of Agreement, no Letter of Understanding, and no Memorandum of any kind. The only basis stated for blocking the mandatory contractual hearing was the EEOC charge. Article 37.01 requires all modifications to the Agreement to be in writing;

no written provision bars System Board proceedings during EEOC activity. The claimed "past practice" is contractually inoperative on its face.

106. On February 21, 2026, Attorney Jones transmitted a copy of the EEOC's Right-to-Sue Notice – issued that morning – to Blumberg, with a simultaneous settlement overture. The email noted: "The EEOC this morning issued Mr. O'Dea's right-to-sue notice as Official Washington prepares for the major-exposure event coming in the wake of the now-known misconduct by U.S. trade adversary Canada's flag-carrier airline, your client Air Canada." Air Canada did not respond.

107. On February 24, 2026, IBT counsel Andrew Hoffmann confirmed Air Canada's retaliatory position in a written email to Attorney Jones, stating: "Air Canada seems to be reticent to schedule a System Board on Mr. O'Dea's grievance based on the EEOC charge you have files [*sic*] as well as your announced intention to immediately pursue federal litigation against the carrier on Ms. O'Dea's behalf." Hoffmann further indicated he would advise Air Canada that Plaintiff "does not intend to pursue any further individual statutory claims against the Carrier and that as a result, his grievance should proceed to a System Board forthwith" – explicitly conditioning the mandatory contractual hearing on Plaintiff's surrender of his federal civil rights claims. Plaintiff did not and does not agree to that condition.

108. Attorney Jones responded to Hoffmann the same day: "If Air Canada is reticent (retaliatory) to follow the union contract on suspension because Mr. O'Dea went to the EEOC based on discrimination occurring months before the suspension, and that EEOC charge is over and closed (of which Air Canada has official proof), then we are dealing with an employer that plainly is operating in retaliation under Title VII. This is not abstract. It's textbook harm and taking away of employment terms, conditions, and benefits BECAUSE Mr. O'Dea is at the EEOC. Blumberg has confessed it." That same email noted that "Air Canada rushed to cut off Mr. O'Dea amidst his

back-to-back hospitalization-related medical treatments, with full knowledge he was in in-patient care."

109. Air Canada therefore possessed, by February 24, 2026, contemporaneous written confirmation from three separate documents – its own counsel's email of February 20, Attorney Jones's Right-to-Sue transmittal of February 21, and the Hoffmann chain of February 24 – of every material fact: the EEOC filing, the timely contractual appeal, the Article 22.09 mandate, the fraudulent backdated letter, the hospitalizations, and the Title VII exposure. Air Canada proceeded to do nothing.

**M. 128 Days to an "Expedited" Hearing as of the Date of the Original Complaint in this Action**

110. Defendant was on notice as Plaintiff made good-faith communication after good-faith communication attempt – more than 15 letters, emails, and/or official notices and filing – to resolve the problems Defendant was causing.

111. Yet, for one hundred and twenty-eight (128) days following the SPD notice – the mandatory trigger for the contractually designated "Expedited" System Board – Air Canada took practically zero steps to schedule the hearing. During this period, Plaintiff remained without income, without medical or dental coverage for an extended period in which Defendant refused to provide coverage until Plaintiff's attorney's interventions over many days led to restoration (but without prompt notice of such reinstatement to Plaintiff, despite Plaintiff's known hospitalizations), and without any information about the case being built against him.

112. Between February 22, 2026 – the date of the last substantive union communication – and May 5, 2026, Plaintiff received no communication from Air Canada, its counsel, or its union representatives about the hearing, his employment status, or his appeal. This seventy-two (72) day

blackout occurred while Plaintiff was uninsured for a considerable period and had active medical needs arising from his hospitalizations.

113. On May 5, 2026, IBT Local 210 Business Agent Bob Fisher emailed Plaintiff, stating: "The company has proposed June 12th after 11:45am or any day the week of the 15th, also after 11:45am for your Board." On May 6, 2026, Plaintiff responded to Fisher: "I am available June 19th, 2026. Please confirm." On May 13, 2026, Fisher forwarded a Microsoft Teams calendar invitation to Plaintiff, stating: "Here is the Teams invite for your hearing on the 19th of June." The Expedited System Board hearing is therefore now confirmed for June 19, 2026 – one hundred and twenty-eight (128) days after the SPD notice and one hundred and twenty-two (122) days after Plaintiff's timely appeal.

114. No contract clause, letter, or memorandum authorizes a 128-day delay in an "expedited" proceeding. The delay is the product of Air Canada's written decision – confirmed by its own counsel, confirmed by IBT counsel relaying Air Canada's position – to use Plaintiff's EEOC filing as a basis to block the hearing. The delay is the retaliation.

115. As of the date of this Complaint, Air Canada has still deprived Plaintiff of investigative findings; evidence supporting his 2024 demotion; evidence supporting his termination; witness statements; witness list(s); statements attributed to Plaintiff; or meaningful explanation of the charges against him.

116. Plaintiff's ERISA-protected health and dental benefits were eliminated and restored only after costly interventions. Attorney Jones has not been recognized as Plaintiff's representative in the union hearing, vetoed as Plaintiff's chosen representative in direct violation of the text and the

spirit of the in-force Teamsters contract with Defendant. A hearing convened under these conditions would be the form of process without its substance.

**N. ERISA-Protected Benefits and Retirement Eligibility**

117. Air Canada's pension plan, retirement health benefits, health and dental plan, and 401(k) plan are ERISA-covered employee benefit plans within the meaning of 29 U.S.C. § 1002(1)–(3). Air Canada's own Separation Agreement – drafted by its counsel – expressly acknowledged Plaintiff's "vested rights under ERISA-covered employee benefit plans" as non-waivable, acknowledged Plaintiff's retirement eligibility effective November 1, 2026, committed to "continued wages and benefits ... through Termination Date" and "eligibility for standard Company Retiree Benefits," and then was withdrawn by Air Canada the moment Plaintiff asserted his EEO rights on January 29, 2026.

118. Air Canada purported to terminate Plaintiff eight (8) months before his November 1, 2026, retirement eligibility date – the date on which he would have attained lifetime pension and retiree health benefits after thirty-six years of service. The only material event between Air Canada's prior willingness to honor that retirement date and its decision to terminate him was the EEOC filing.

119. As of April 21, 2026, Fidelity – the administrator of Plaintiff's Air Canada 401(k) plan – continued to report Plaintiff as an "active employee," despite the purported termination and Air Canada's cessation of all wage payments since mid-February 2026. Fidelity advised Plaintiff that the status should have been corrected "within one to two pay periods" after his final paycheck. As a direct result of Air Canada's failure to accurately update Plaintiff's employment status with the plan administrator, Plaintiff's outstanding 401(k) loan has gone into default, triggering a deemed distribution under I.R.C. § 72(p): immediate federal income tax liability on the full outstanding

loan balance and a 10% early withdrawal penalty – a substantial, irreversible financial loss caused entirely by Air Canada's administrative misreporting.

**O. Hospitalizations, FMLA, and Workers' Compensation**

120. Plaintiff suffers from COPD and asthma. He was admitted to Inova Hospital Heart and Vascular Institute on January 26, 2026, and discharged February 1, 2026 – seven (7) days – for severe respiratory distress and acute exacerbation of COPD and asthma; his treating physician's notes confirmed workplace stress as a recognized trigger. He was readmitted on February 7, 2026, and discharged February 11, 2026 – four (4) days – the same date Air Canada issued the SPD notice. Air Canada's Benefits Advisor confirmed that FMLA paperwork Plaintiff had initiated was "on hold" as of February 14, 2026 – placed on administrative hold at the precise moment Air Canada was processing Plaintiff's benefits termination using the fraudulent backdated date of February 10, 2026, the start of Plaintiff's second hospitalization.

121. Air Canada rushed to terminate Plaintiff's benefits with full knowledge – documented in writing by February 24, 2026, at the latest – that he was in in-patient care during back-to-back hospitalizations. Attorney Jones's February 24 email to Hoffmann stated expressly: "Air Canada rushed to cut off Mr. O'Dea amidst his back-to-back hospitalization-related medical treatments, with full knowledge he was in in-patient care. The physician has called for intervention as per the attached letter about the illegal abortion of Mr. O'Dea's benefits in flagrant violation of the Teamsters contract."

122. Plaintiff has an accepted workers' compensation claim for a massive torn rotator cuff injury sustained on duty at Ronald Reagan Washington National Airport ("DCA"), Arlington County, Virginia, on January 19, 2022. Air Canada has been paying workers' compensation benefits since 2022; the claim was active and being paid at the time of the purported termination. Air Canada's

own Separation Agreement expressly carved out workers' compensation claims from the release it sought, demonstrating specific contemporaneous awareness of the claim's active status.

## CAUSES OF ACTION

Plaintiff now pleads four streamlined statutory counts in place of the fourteen counts asserted in the original Complaint: **Title VII disparate treatment** because of sex, including sexual orientation; **Title VII hostile work environment** because of sex, including sexual orientation; **Title VII retaliation**; and **FMLA interference and retaliation**. This narrowing is intentional.

The First Amended Complaint does not ask the Court to interpret, enforce, modify, or apply the collective bargaining agreement, and references to the IBT Agreement, discipline procedures, System Board process, benefits administration, seniority, or other workplace mechanisms are pleaded only as factual context, chronology, comparator evidence, evidence of notice, motive, pretext, causation, and damages. Plaintiff seeks to enforce only independent federal statutory rights created by Title VII and the FMLA. Under *Hawaiian Airlines*, those independent statutory claims may proceed where liability can be resolved without construing the labor agreement.

In this case, liability turns on statutory questions: whether Air Canada discriminated against Plaintiff because of sex or sexual orientation, subjected him to a hostile work environment, retaliated against him for protected EEO activity, and interfered with or retaliated against him for exercising FMLA rights. Those questions can be adjudicated under federal statutes without construing the CBA.

### COUNT I
### Title VII Disparate Treatment Because of Sex/Sexual Orientation against Defendant Air Canada
### 42 U.S.C. § 2000e-2(a)

123. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

124. Plaintiff brings this Count to enforce rights created by Title VII of the Civil Rights Act of 1964, as amended, including the statutory right to be free from discrimination because of sex, including sexual orientation. This Count does not seek interpretation, enforcement, modification, or application of the collective bargaining agreement. Any reference to the IBT Agreement, discipline procedures, System Board proceedings, seniority, Lead status, benefits, or other workplace mechanisms is pleaded as factual context, chronology, comparator evidence, evidence of motive, evidence of pretext, and evidence of damages.

125. Plaintiff is a gay man. Air Canada knew Plaintiff's sexual orientation and knew, for years, that Plaintiff believed he was being subjected to anti-gay hostility, unequal scrutiny, and differential treatment. Plaintiff reported those concerns to managers, Human Resources, Air Canada's Harassment Office, investigators, Employee Assistance, and an Air Canada LGBTQ+ employee group.

126. Air Canada subjected Plaintiff to adverse employment actions and unequal terms, conditions, and privileges of employment because of sex, including sexual orientation. Those actions included, without limitation, exceptional scrutiny; written expectations and reprimands; denial of comparable workplace protection; rejection or minimization of Plaintiff's harassment complaints; crediting Rehab Saad's counter-complaint while rejecting or discounting Plaintiff's complaint; imposing a ten-day unpaid suspension; removing Plaintiff from the Lead Customer Experience Specialist position he had held for approximately twenty-nine years; elevating Saad into the Lead classification shortly after Plaintiff's demotion; issuing warnings and escalating discipline; suspending Plaintiff; moving him to unpaid status; purporting to discharge him; interrupting pay and benefits; and denying him ordinary employment-review protections after he complained of anti-gay discrimination.

127. Plaintiff was treated less favorably than employees outside his protected class and less favorably than employees who did not complain of anti-gay discrimination. Air Canada promptly removed another employee, Stephen Kim, when Rehab and another employee reported feeling unsafe, but Air Canada did not provide comparable protection when Plaintiff repeatedly reported that he did not feel safe working with Rehab. Air Canada tolerated, excused, promoted, or rewarded employees who directed hostile or anti-gay conduct toward Plaintiff, while disciplining and demoting Plaintiff after he complained.

128. Air Canada's disparate treatment included materially different responses to comparable conduct, requests, assignments, scheduling, leave, overtime, badge, restroom, Operations-office, safety, and discipline issues. Plaintiff alleges that Air Canada applied standards to him that it did not apply to similarly situated employees including, among others, Rehab Saad, Ibrahim Elbayyar, Ahmed Abdalla, Ileene Sanchez, Valentina Thapanawat, Teresa Vanta, and other employees identified in the factual allegations.

129. Air Canada's discriminatory motive is supported by, among other facts: Rehab's statement that Plaintiff should consider himself fortunate he had not grown up in the Middle East because people there would have thrown him off a building; the substantiated finding that Cheryll Thwaites used the phrase "gay card" when Plaintiff complained about his treatment; Glenn Aragon's report that Plaintiff was treated differently because of his sexual orientation and was held to a different standard; Plaintiff's repeated reports of anti-gay hostility; Air Canada's failure to correct the hostility effectively; Air Canada's elevation of Rehab after Plaintiff complained about her; and Air Canada's escalating discipline, suspension, and discharge-related actions following Plaintiff's protected complaints.

130. Plaintiff need not ask the Court to construe the IBT Agreement to decide whether Air Canada discriminated against him because of sex or sexual orientation. Liability turns on statutory questions under Title VII: whether Plaintiff is a member of a protected class; whether he suffered adverse actions or unequal terms, conditions, or privileges of employment; whether similarly situated or favored employees were treated more favorably; whether discriminatory motive or sex/sexual-orientation bias was a motivating factor; and whether Air Canada's stated reasons were pretextual. Those questions can be resolved by applying Title VII to the facts, without interpreting the labor agreement.

131. *Hawaiian Airlines* permits adjudication of independent statutory rights when liability can be resolved without construing a labor agreement. Plaintiff pleads this Count solely to vindicate independent federal statutory rights under Title VII.

132. As a direct and proximate result of Air Canada's unlawful disparate treatment, Plaintiff has suffered lost wages, lost benefits, loss of Lead status, loss of employment status, loss of retirement security, medical disruption, emotional distress, humiliation, anxiety, reputational harm, and other compensable injuries.

133. Plaintiff seeks all relief available under Title VII, including declaratory relief, reinstatement, back pay, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees, costs, and such other relief as the Court deems just and proper.

**COUNT II**
**Title VII Hostile Work Environment Because of Sex/Sexual Orientation against Defendant Air Canada**
**42 U.S.C. § 2000e-2(a)**

134. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

135. Plaintiff brings this Count to enforce the independent federal statutory right under Title VII to work free from a hostile work environment because of sex, including sexual orientation. This Count does not seek interpretation or enforcement of the IBT Agreement. Any reference to workplace procedures, assignments, discipline, Lead status, investigations, hearing delays, benefits, or other employment mechanisms is pleaded as factual context, evidence of notice, evidence of severity or pervasiveness, evidence of Air Canada's response, evidence of retaliatory or discriminatory ratification, and evidence of damages.

136. Plaintiff was subjected to a hostile work environment because of sex, including sexual orientation. The hostile environment included anti-gay comments, gendered ridicule, threats, humiliation, unequal scrutiny, unsafe working conditions, leaked or mishandled complaints, differential protection, and management decisions that ratified rather than corrected the hostility.

137. The hostile environment included, without limitation, Rehab Saad's statement that Plaintiff should consider himself fortunate he had not grown up in the Middle East because people there would have thrown him off a building; Rehab's repeated personal attacks, including calling Plaintiff a "piece of shit"; Rehab's August 12, 2025 threat that Plaintiff had "better watch [his] back"; the substantiated "gay card" remark by manager Cheryll Thwaites; reports that Plaintiff was treated differently because of his sexual orientation; reports that Plaintiff was a "targeted minority" held to a different standard; other anti-gay language in the workplace; and Air Canada's repeated failure to take effective corrective action.

138. The hostile environment also included Air Canada's unequal and dismissive response to Plaintiff's safety and harassment complaints. Plaintiff repeatedly reported that Rehab's conduct caused him fear, distress, and concern for his safety. Air Canada left Rehab in place, excused her

conduct, credited her counter-complaint, disciplined and demoted Plaintiff, and then elevated Rehab into the Lead classification from which Plaintiff had been removed.

139. Air Canada knew or should have known of the hostile environment. Plaintiff repeatedly reported anti-gay hostility and unequal treatment to Air Canada managers, Human Resources, the Harassment Office, investigators, Employee Assistance, and LGBTQ+ resources. Glenn Aragon separately reported perceived unequal treatment based on sexual orientation. Air Canada's own investigation substantiated that Thwaites used the phrase "gay card." Air Canada nevertheless failed to take prompt and effective remedial action sufficient to stop the hostility.

140. The conduct was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment. Plaintiff alleges that the hostile environment caused anxiety, nausea, sleeplessness, dread, aggravation of his medical conditions, humiliation, fear of escalation, loss of workplace safety, and deterioration of his ability to work under ordinary conditions.

141. Air Canada's response compounded the hostile environment. Instead of protecting Plaintiff, Air Canada subjected him to escalating scrutiny, adverse investigations, suspension, demotion, loss of Lead status, warnings, unpaid status, discharge-related actions, benefit disruption, and prolonged uncertainty, while tolerating or rewarding the employee whose conduct Plaintiff had reported.

142. Plaintiff need not ask the Court to construe the IBT Agreement to decide this Count. Liability turns on statutory Title VII questions: whether Plaintiff was subjected to unwelcome harassment because of sex or sexual orientation; whether the harassment was severe or pervasive; whether Air Canada knew or should have known of the harassment; and whether Air Canada failed

to take prompt and effective corrective action. Those questions arise from Title VII itself and can be resolved without interpreting the labor agreement.

143. *Hawaiian Airlines* permits adjudication of independent statutory rights when liability can be resolved without construing a labor agreement. Plaintiff pleads this Count solely to vindicate independent federal statutory rights under Title VII.

144. As a direct and proximate result of Air Canada's unlawful hostile work environment, Plaintiff has suffered lost wages, lost benefits, medical disruption, emotional distress, humiliation, anxiety, reputational harm, physical aggravation, and other compensable injuries.

145. Plaintiff seeks all relief available under Title VII, including declaratory relief, reinstatement, back pay, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees, costs, and such other relief as the Court deems just and proper.

**COUNT III**
**Title VII Retaliation**
**against Defendant Air Canada**
**42 U.S.C. § 2000e-3(a)**

146. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

147. Plaintiff brings this Count to enforce the independent federal statutory right under Title VII to oppose discrimination, file an EEOC charge, participate in protected EEO activity, and seek federal civil-rights remedies without retaliation. This Count does not seek interpretation or enforcement of the IBT Agreement. Any reference to the System Board process, representation, benefits, pay, discipline, suspension, discharge, or other workplace mechanisms is pleaded as evidence of protected activity, Air Canada's knowledge, materially adverse action, causation, retaliatory motive, pretext, and damages.

148. Plaintiff engaged in protected activity under Title VII repeatedly, including the December 2022 complaints regarding anti-gay treatment; the July 1, 2024 harassment complaint against Rehab Saad; reports to Air Canada's LGBTQ+ group, Harassment Office, Employee Assistance, managers, Human Resources, and investigators; September 2024 safety and retaliation reports; August and September 2025 discrimination and hostile-work-environment complaints; the January 29, 2026 EEO assertion through counsel; and EEOC Charge No. 570-2026-01494.

149. Air Canada knew of Plaintiff's protected activity. Plaintiff made many of the complaints directly to Air Canada personnel, investigators, Human Resources, and harassment officials. Air Canada also received the January 29, 2026 EEO assertion and knew of the EEOC charge no later than February 2026.

150. Air Canada took materially adverse actions that would dissuade a reasonable worker from making or supporting a charge of discrimination. Those actions included, without limitation, reprimanding Plaintiff the day after his July 1, 2024 complaint against Rehab; crediting Rehab's counter-complaint while rejecting or discounting Plaintiff's complaint; imposing a ten-day unpaid suspension; removing Plaintiff from his long-held Lead position; elevating Rehab shortly afterward; threatening withdrawal or dismissal of Plaintiff's later complaints; suspending Plaintiff remotely while he was away from work; denying him specific evidence and a promised final interview; moving him to unpaid status; issuing a Suspension Pending Discharge notice thirteen days after the January 29, 2026 EEO assertion; interrupting pay, benefits, and ordinary employment-review measures; refusing or delaying employment-review processes because of the EEOC charge; opposing participation by Plaintiff's EEO counsel; and prolonging Plaintiff's uncertainty, unpaid status, and benefit disruption after protected activity.

151. The causal connection between Plaintiff's protected activity and Air Canada's adverse actions is supported by temporal proximity, escalating treatment after repeated protected complaints, differential treatment between Plaintiff and Rehab, withdrawal of Air Canada's pending separation proposal immediately after Plaintiff's January 29, 2026 EEO assertion, the February 11, 2026 Suspension Pending Discharge notice, and Air Canada's written linkage between ordinary employment-review processing and Plaintiff's EEOC and federal civil-rights activity.

152. Air Canada's retaliatory motive is further supported by the February 20, 2026 statement by Air Canada's counsel: "Air Canada does not consent to the System Board process while Mr. O'Dea is pursuing overlapping remedies through other processes." The referenced "overlapping" process was Plaintiff's EEOC activity and anticipated federal civil-rights litigation. Air Canada's position was confirmed by union counsel's February 24, 2026 statement that "Air Canada seems to be reticent to schedule a System Board on Mr. O'Dea's grievance based on the EEOC charge" and Plaintiff's announced federal litigation. Plaintiff refused to surrender his civil-rights claims.

153. Air Canada's retaliation was not limited to one event. Plaintiff alleges a continuous retaliatory course that began after internal anti-gay complaints and escalated after the January 29, 2026 EEO assertion and EEOC charge, culminating in unpaid suspension, discharge-related action, pay interruption, benefit disruption, denial or delay of employment-review measures, and pressure to abandon statutory claims.

154. Plaintiff need not ask the Court to construe the IBT Agreement to decide this Count. Liability turns on statutory Title VII questions: whether Plaintiff engaged in protected activity; whether Air Canada knew of that activity; whether Air Canada took materially adverse actions; whether those actions were causally connected to protected activity; and whether Air Canada's

stated reasons were pretextual. The Court can answer those questions without interpreting the labor agreement.

155. *Hawaiian Airlines* permits adjudication of independent statutory rights when liability can be resolved without construing a labor agreement. Plaintiff pleads this Count solely to vindicate independent federal statutory rights under Title VII.

156. As a direct and proximate result of Air Canada's unlawful retaliation, Plaintiff has suffered lost wages, lost benefits, loss of employment status, loss of retirement security, medical disruption, emotional distress, humiliation, anxiety, reputational harm, and other compensable injuries.

157. Plaintiff seeks all relief available under Title VII, including declaratory relief, reinstatement, back pay, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees, costs, and such other relief as the Court deems just and proper.

**COUNT IV**
**FMLA Interference and Retaliation**
**Against Defendant Air Canada**
**29 U.S.C. §§ 2612, 2615, 2617**

158. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

159. Plaintiff brings this Count to enforce rights created independently by the Family and Medical Leave Act. This Count does not seek interpretation, enforcement, modification, or application of the IBT Agreement. Any reference to Plaintiff's employment status, pay, benefits, scheduling, discipline, suspension, discharge, or employment-review mechanisms is pleaded as factual context, evidence of notice, evidence of interference, evidence of retaliation, evidence of prejudice, and evidence of damages.

160. Plaintiff was an eligible employee under the FMLA, and Air Canada was a covered employer. Plaintiff suffered from serious health conditions, including COPD, severe allergic asthma, interstitial lung disease, pulmonary exacerbations, and related conditions requiring treatment, intermittent leave, and hospital care.

161. Air Canada knew for years that Plaintiff used intermittent FMLA leave for COPD, asthma, interstitial lung disease, and related exacerbations. Plaintiff submitted and resubmitted certifications, requested intermittent FMLA leave, and informed Air Canada that pulmonary triggers, illness, and medical exacerbations affected his ability to work.

162. Air Canada interfered with Plaintiff's FMLA rights by questioning, delaying, recoding, challenging, or requiring repeated proof for absences associated with serious pulmonary conditions; treating FMLA-related absences as attendance issues; requiring resubmission of paperwork that had been pending; failing to process FMLA paperwork in a timely manner; placing renewed FMLA paperwork "on hold" while processing Plaintiff's separation and benefits status; and taking adverse employment action immediately after qualifying hospitalizations and FMLA-related leave.

163. Plaintiff's serious health conditions required hospitalization from January 26 through February 1, 2026, for severe respiratory distress and acute exacerbation of COPD and asthma, and readmission from February 7 through February 11, 2026. Air Canada issued the Suspension Pending Discharge notice on February 11, 2026, the date of Plaintiff's second hospital discharge. Plaintiff had initiated additional FMLA paperwork, but Air Canada's Benefits Advisor reported that the paperwork was "on hold" while Air Canada processed his separation and benefits status.

164. Air Canada further interfered with Plaintiff's FMLA rights by interrupting or destabilizing income and medical coverage while Air Canada knew Plaintiff was undergoing active treatment and had just completed back-to-back hospital admissions. Plaintiff and his counsel repeatedly notified Air Canada of the danger created by a lapse or disruption in coverage. On February 24, 2026, Plaintiff's treating physician, Timothy Price, M.D., provided written notice that uninterrupted access to medical care and health insurance coverage was medically necessary and that disruption or termination of insurance benefits would be harmful to Plaintiff's health and could negatively affect treatment.

165. Air Canada retaliated against Plaintiff for exercising or attempting to exercise FMLA rights by escalating scrutiny, attendance discipline, suspension, unpaid status, discharge-related action, benefit disruption, and delay or withholding of ordinary employment measures after Plaintiff used, requested, or attempted to protect FMLA leave.

166. The timing and circumstances support retaliatory causation. Air Canada acted immediately after Plaintiff's January and February 2026 hospitalizations, placed FMLA paperwork on hold while processing separation and benefits disruption, issued the February 11, 2026 Suspension Pending Discharge notice on the date of Plaintiff's second hospital discharge, and continued its adverse course after receiving written medical notice that uninterrupted insurance coverage was medically necessary.

167. Plaintiff was prejudiced by Air Canada's FMLA interference and retaliation. He lost wages, benefits, stable medical coverage, employment status, and ordinary access to leave protection; he suffered medical disruption, stress, anxiety, and other harm while managing serious pulmonary disease and recovering from repeated hospitalizations.

168. Plaintiff need not ask the Court to construe the IBT Agreement to decide this Count. Liability turns on statutory FMLA questions: whether Plaintiff was eligible for FMLA protection; whether Air Canada was covered; whether Plaintiff had serious health conditions; whether Plaintiff gave sufficient notice or requested protected leave; whether Air Canada interfered with, restrained, or denied FMLA rights; whether Air Canada retaliated against Plaintiff for protected FMLA activity; and whether Plaintiff suffered prejudice and damages. Those questions arise under the FMLA and can be resolved without interpreting the labor agreement.

169. *Hawaiian Airlines* permits adjudication of independent statutory rights when liability can be resolved without construing a labor agreement. Plaintiff pleads this Count solely to vindicate independent federal statutory rights under the FMLA.

170. As a direct and proximate result of Air Canada's FMLA interference and retaliation, Plaintiff has suffered lost wages, lost benefits, medical disruption, out-of-pocket losses, emotional distress, anxiety, physical aggravation, and other compensable injuries.

171. Plaintiff seeks all relief available under the FMLA, including lost wages, salary, benefits, interest, liquidated damages, equitable relief, reinstatement, front pay where appropriate, attorney's fees, costs, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Brent O'Dea respectfully requests that this Court enter judgment in his favor and against Defendant Air Canada and grant the following relief:

A. A declaration that Air Canada's conduct violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff because of sex, including sexual orientation, subjecting Plaintiff to

a hostile work environment because of sex, including sexual orientation, and retaliating against Plaintiff for protected EEO activity;

B. A declaration that Air Canada's conduct violated the Family and Medical Leave Act by interfering with, restraining, or denying Plaintiff's exercise of FMLA rights and by retaliating against Plaintiff for exercising or attempting to exercise FMLA rights;

C. Reinstatement to Plaintiff's position with full seniority, status, pay, benefits, and all other terms and privileges of employment restored;

D. In the alternative to reinstatement, front pay in an amount to be determined at trial;

E. Back pay, lost wages, lost salary, lost employment benefits, lost retirement-related compensation, and all other economic losses caused by Air Canada's unlawful conduct, with pre- and post-judgment interest;

F. Restoration of all employment benefits, including health, dental, pension, retirement, travel, leave, and other employment-related benefits lost, interrupted, denied, or impaired as a result of Air Canada's unlawful conduct;

G. Compensation for out-of-pocket medical expenses, coverage-related losses, tax consequences, financial penalties, and other consequential economic losses caused by Air Canada's unlawful conduct;

H. Compensatory damages under Title VII for emotional distress, humiliation, anxiety, reputational harm, physical and medical disruption, inconvenience, loss of enjoyment of life, and other non-economic injuries;

I. Liquidated damages under the FMLA in an amount equal to the damages and interest awarded under the FMLA, unless Defendant proves grounds to avoid liquidated damages;

J. Punitive damages under Title VII for Defendant's malicious, reckless, or callous disregard of Plaintiff's federally protected rights;

K. Equitable and injunctive relief necessary to make Plaintiff whole and prevent further unlawful conduct, including correction of employment, personnel, benefits, leave, retirement, and payroll records; removal or correction of adverse records created or maintained because of unlawful discrimination, retaliation, or FMLA interference; and restoration of Plaintiff to the position he would have occupied absent Defendant's unlawful conduct;

L. Reasonable attorney's fees, expert fees where recoverable, litigation expenses, and costs under Title VII, the FMLA, and all other applicable law;

M. Pre-judgment and post-judgment interest at the lawful rate; and

N. Such other and further legal or equitable relief as the Court deems just, proper, and necessary to make Plaintiff whole.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Amos N. Jones
Amos N. Jones
*Attorney for Plaintiff John Brent O'Dea*
D.C. Bar No. 974919

AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW, Suite 1025
Washington, D.C. 20006
Telephone: (202) 351-6187
Facsimile: (202) 478-1654
Email: jones@amosjoneslawfirm.com

Dated: Monday September 21, 2026